# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jun 24, 2026
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Luis A. Burgos-Rosario D.O.B. XX/XX/1989 | ) | Case No. **26-M-447 (SCD)** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 24, 2026_____ in the county of _____Milwaukee_____ in the
_____Eastern_____ District of _____Wisconsin_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 856 | Maintaining a drug-involved premises |
| Title 18, United States Code, Sections 922(g)(1), 924(c), and 2(a) | Prohibited Person in Possession of a Firearm<br>Use of a Firearm in Furtherance of Drug Trafficking<br>Aiding and Abetting the Aforementioned Offenses |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

*Justin Byers*
*Complainant's signature*

Justin Byers, FBI Special Agent
*Printed name and title*

Sworn via telephone; transmitted via email
pursuant to Fed. R. Crim. 4.1

Date: ___6-24-26___

*Judge's signature*

City and state: _____Milwaukee, Wisconsin_____      Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Justin Byers, being duly sworn, hereby dispose and state as follows:

## INTRODUCTION AND BACKGROUND

1.      I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Your Affiant has been a Special Agent with the Federal Bureau of Investigation (FBI) since June, 2025 and is assigned to the FBI's Milwaukee Area Safe Streets Task Force (MASSTF), a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including narcotics trafficking and conspiracy to possess narcotics with intent to distribute, as defined under Title 21 of the United States Code. Your Affiant has been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. Your Affiant has participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects and confidential human sources. As a result of this training and investigative experience, your Affiant has learned how and why narcotics traffickers typically conduct various aspects of their criminal activities. Your Affiant has experience in the investigation of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of

1

cellular devices and their location. Through your Affiant's training, education, and experience, your Affiant became familiar with the manner in which illegal drugs are transported, stored, and distributed, and the methods of payment for such drugs.

2. Your Affiant has participated in investigations involving the interception of communications made via wire and electronic communication devices and is familiar with the ways in which drug traffickers conduct their business, including, but not limited to: their methods of importing and distributing drugs; their use of cellular telephones and digital display paging devices; and their use of numerical codes and code words to conduct their transactions. Your Affiant has also reviewed and interpreted conversations related to the distribution of heroin, cocaine, and other controlled substances.

3. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, concerning the methods and practices of drug

2

traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4. Based upon my training and experience, as well as information relayed to me during the course of my official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, fentanyl, and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest border of the United States, because Mexican cartels control the transportation, sale, and importation of cocaine, marijuana, heroin, fentanyl, and methamphetamine into the United States.

5. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

    a.    I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals

3

and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.      I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c.      I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d.      I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.

e.      I know that drug traffickers commonly have in their possession, and at their residences and other locations ("stash houses") where they exercise dominion and control, controlled substances, firearms, ammunition, drug proceeds, and records or receipts pertaining their drug trafficking;

f.      I know that drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often times members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substances to deliver. Additionally, drug traffickers will have customers meet drug traffickers near the stash location. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person or maintain them at their residence. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made or inside their personal residence. Often time the US currency will be

4

transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews.

g.      I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry.  I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

6. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7. The facts in this affidavit come my personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources:

a.  my experience investigating drug traffickers;

5

b. oral and written reports, and documents about this investigation that I have received from members of the Federal Bureau of Investigations, local law enforcement, and other federal law enforcement agencies;

c. discussions I have had personally concerning this investigation with experienced narcotics investigators;

d. physical surveillance conducted by the Federal Bureau of Investigation and local law enforcement agencies, the results of which have been reported to me either directly or indirectly;

e. static electronic surveillance, the results of which have been reviewed by members of the Federal Bureau of Investigations and local law enforcement and reported to me either directly or indirectly;

f. public records;

g. telephone pen register and trap and trace information;

h. statements of a confidential human source;

i. consensually recorded telephone calls;

j. consensually recorded meetings and conversations;

k. controlled purchases of narcotics; and

l. court ordered precision location data ("pings") from telephone service providers.

8. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly

6

participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

9. Pursuant to my official duties, I am submitting this Affidavit in support of an application for complaint and arrest warrant for Luis Antonio BURGOS-ROSARIO (DOB: XX/XX/1989) (TARGET SUBJECT) for violations of federal law, including violations of Title 21, United States Code, Sections 856 (Maintaining a drug-involved premises) and Title 18, United States Code, Sections 922(g)(1) (Prohibited Person in Possession of a Firearm), 924(c) (Use of a Firearm in Furtherance of Drug Trafficking), and 2(a) (Aiding and Abetting the Aforementioned Offenses), collectively referred to as the Target Offenses.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that the Target Offenses have been committed by BURGOS-ROSARIO, as well as other known and unknown persons. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of the sources detailed above as well as other information.

11. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

**PROBABLE CAUSE**

7

12. The United States, including, FBI, is conducting a criminal investigation into BURGOS-ROSARIO, who is believed to be engaged in the trafficking of controlled substances, specifically fentanyl and cocaine, in southeastern Wisconsin.

13. Based on this investigation, I secured federal search warrants for various residences and vehicles associated with BURGOS-ROSARIO. Specifically, on June 22, 2026, the Honorable Steven C. Dries, Magistrate Judge for the Eastern District of Wisconsin, authorized warrants to search BURGOS-ROSARIO's person, certain vehicles, as well as the following properties:

   a. XXXX Marshall Avenue, South Milwaukee, WI 53172 ("TARGET PREMISES 1")
   b. XXXX South 9th Place, Suite 801, Milwaukee, WI 53215 ("TARGET PREMISES 2")
   c. XXXX South 33rd Street, Milwaukee, WI 53215 ("TARGET PREMISES 3")

**Warrant Executions on June 24, 2026**

14. On June 24, 2026, case agents executed the above-described federal search warrants at the three TARGET PREMISES. BURGOS-ROSARIO was located and arrested at TARGET PREMISES 1.

**TARGET PREMISES 1**

15. During the course of the investigation, case agents have used telephone ping data and surveillance to positively identify this residence and confirm that BURGOS-ROSARIO resides at this location. Case agents believed that this location is used to store narcotics, drug proceeds, and other evidence of BURGOS-ROSARIO'S

8

involvement in the Target Offenses. BURGOS-ROSARIO has been observed at this location over the course of the investigation and was arrested within this residence during the execution of the search warrant.

16. Within TARGET PREMISES 1, case agents located:

a. BURGOS-ROSARIO, two other adults (an adult male and an adult female), and various children;

b. Numerous identifying documents in BURGOS-ROSARIO's name;

c. Three firearms were located within BURGOS-ROSARIO's bedroom along with identifying documents in BURGOS-ROSARIO's name;

    i. These firearms are more specifically described at:

        1. ARSENAL Model SAM7K – AK style rifle, 7.62 caliber, Serial Number: KP600741

        2. Smith & Wesson Model MP9 – handgun, 9mm caliber, Serial Number: HZA2163

        3. Taurus Model G2C – handgun, 40 caliber, Serial Number: ADJ694656

d. Items of drug paraphernalia including a scale, multiple blender bottles, and numerous empty clear plastic packaging were found in the basement laundry room area. One of the baggies discovered was twisted with the corner missing. I believe that the blender station with blender bottles containing suspected drug residue, a scale, and baggie with the corners missing, is consistent with the manufacturing and packaging of controlled substances. I know, based on my training and experience, that baggies with missing corners are consistent with drugs being placed into the corners, then the corners being tied off and removed so that the drugs can

9

be sold. I also know that blenders are used for the processing of controlled substances (such as the mixing of substances or the introduction of cutting agents) prior to packaging.

e. Within the basement bathroom, case agents located numerous plastic baggies consistent with drug trafficking packaging in the bathroom trash. In the basement bathroom toilet, case agent located bleach and apparent feces. Based on my training and experience, I believe that this is consistent with controlled substances being flushed upon the occupant(s) becoming aware that law enforcement was attempting to enter the residence. I believe that an adult male (not the defendant) was located in the basement area once officers made entry;

17. Based on my training and experience, I believe that the firearms recovered from TARGET PREMISES 1 were used by BURGOS-ROSARIO in furtherance of his drug trafficking including to protect TARGET PREMISES 1 which I believe BURGOS-ROSARIO was using to package controlled substances for distribution.

18. I know from my review of his criminal history that BURGOS-ROSARIO is a convicted felon. Specifically, according to online Wisconsin Circuit Court Access (CCAP) records, I know that BURGOS-ROSARIO was convicted in Milwaukee County case 2011CF5311 of the felony offenses of Felony Bail Jumping and Possession with the Intent to Deliver THC on March 12, 2012. These are both Class H felonies, punishable by more than one year of imprisonment.

**TARGET PREMISES 2**

19. Within TARGET PREMISES 2, case agents located baggies that tested positive during a presumptive test for cocaine.

10

**TARGET PREMISES 3**

20. When case agents executed the warrant at TARGET PREMISES 3 on June 24, 2026, case agents located one adult male who was armed with a firearm. Over the course of the investigation, case agents have observed BURGOS-ROSARIO access TARGET PREMISES 3 through the back alley and depart through the front door of the residence. Additionally, case agents have observed BURGOS-ROSARIO repeatedly return to TARGET PREMISES 3 throughout the day, parking his identified vehicles in TARGET PREMISES 3's east parking slab or along the adjacent alleyway. GPS location data derived from BURGOS-ROSARIO's cellular device indicates that this cellular device is frequently located at TARGET PREMISES 3 during different parts of the day. Case agents have observed BURGOS-ROSARIO depart TARGET PREMISES 3 in a black 2008 Chrysler Town & Country, bearing WI license plate 193PWH, which is registered to the adult male who was present at TARGET PREMISES 3 during the execution of the federal search warrant. Case agents have observed BURGOS-ROSARIO depart TARGET PREMISES 3 in several other vehicles. Based on the foregoing observations, and other information, case agents believe that TARGET PREMISES 3 is BURGOS-ROSARIO's means of stashing and packaging illicit narcotics from the TARGET OFFENSES. Case agents last observed BURGOS-ROSARIO at TARGET PREMISES 3 on May 29, 2026. Location data for BURGOS-ROSARIO's device was consistent with the device being in the area of TARGET PREMISES 3 as recently as June 22, 2026.

21. Within TARGET PREMISES 3, case agents located:

a. Three additional firearms, as well as apparent body armor and numerous rounds of ammunition;

b. Approximately 43.7 grams of suspected cocaine. This was located inside of a black satchel bag, which was inside of the closet of the master bedroom; and

c. Approximately 103.1 grams of suspected cocaine/fentanyl mixture. This was located inside of a black satchel bag, which was inside of the closet of the master bedroom; and

d. A scale with apparent drug residue was also located in inside of a black satchel bag, which was inside of the closet of the master bedroom.

22. Presumptive field testing identified the substances found TARGET PREMISES 3 as cocaine and as a mixture of fentanyl and cocaine, respectively. Based on my training and experience, I believe these quantities of cocaine and fentanyl/cocaine are consistent with said substances with being held for distribution and not for personal use based, in part, upon the weight of the substances.

**CONCLUSION**

23. Based on the information above, I submit that there is probable cause to believe that:

12

a. on June 24, 2026, BURGOS-ROSARIO violated Title 21, United States Code, Sections 856 (Maintaining a drug-involved premises) and Title 18, United States Code, Sections 922(g)(1) (Prohibited Person in Possession of a Firearm), 924(c) (Use of a Firearm in Furtherance of Drug Trafficking), and 2(a) (Aiding and Abetting the Aforementioned Offenses).

13